In the United States District Court
for the Western District of Michigan
Southern Division

FILED - GR
October 16, 2024 4:07 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JJM SCANNED BY: KB / 10/17

United States of America *ex rel.* Robert T. Kendall IV,

*Plaintiff*,

vs.

McPhillips Flying Service, Inc. d/b/a Island and Paul Welke,

*Defendants*.

Civil Action No. ________________

**FILED UNDER SEAL**

**1:24-cv-1084**
**Robert Jonker- U.S. District Judge**

**QUI TAM COMPLAINT**

Relator Robert T. Kendall IV alleges violations of the False Claims Act (31 U.S.C. §§ 3729-3732) against Defendants McPhillips Flying Service, Inc. d/b/a Island Airways and its owner, Paul Welke, and for cause of action shows as follows:

## I. Introduction

1. Island committed Economic Injury Disaster Loan ("EIDL") fraud against the U.S. Small Business Administration and United States Treasury in at least three ways.

2. First, Island materially misrepresented its EIDL loan eligibility on multiple occasions: (1) on its initial loan application, (2) on three subsequent applications to increase the amount of its loan, and (3) on each of its loan agreements with the SBA, all to fraudulently obtain a total of $980,000 in EIDL loan proceeds. Had Island told the truth on its paperwork with the SBA, it never would have qualified for the loan or loan increases.

3. Second, Island used at least $300,000 of its EIDL loan to buy fixed assets, such as a new plane for its fleet, new landing gear for its planes, a fork truck, and more. Using EIDL loan proceeds to buy fixed assets is a specifically prohibited use of such disaster-recovery funds. Indeed, Island specifically represented each time it filled out loan paperwork with the SBA that it would use the loan proceeds *only* for working capital and *not* a fixed-asset purchase. Without the SBA's money, Island couldn't have afforded to buy the plane or any of the other fixed assets on which it spent the money.

4. Third, Island bought the plane and landing gear from a British plane manufacturer, Britten-Norman, instead of from an American plane manufacturer. EIDL loan proceeds are supposed to be used to buy American-made products only and, again, Island made specific representations to the SBA that it would comply with the SBA's loan-use requirements every time it applied for a loan or loan increase. Island violated its express representations to the SBA when it spent EIDL loan proceeds to buy British-made equipment, without considering whether American-made equipment would meet its needs.

5. Island's 100% owner, Paul Welke, is responsible for Island's fraud because he personally guaranteed the loan, knowingly made false loan representations on the airline's behalf, and knowingly directed the airline to misuse the loan proceeds for his personal benefit.

6. Defendants are thus liable to the United States for substantial damages, both actual and treble, along with civil penalties and interest. Defendants also separately owe Relator his attorneys' fees incurred in prosecuting this action.

## II.
## The Parties

7. Relator Robert T. Kendall IV is an individual who resides in Houston, Texas.

8. Defendant McPhillips Flying Service, Inc. is a Michigan corporation with its principal place of business in Charlevoix County, Michigan. It may be served via its registered agent for service of process, Paul Welke. Mr. Welke may be served at Island's registered office at 111 Airport Drive, Charlevoix, MI 49720, or wherever he may be found.

9. Defendant Paul Welke is an individual who resides in Charlevoix County, Michigan. He may be served at home at 36026 Melody Lane, Beaver Island, MI 49782, at 111 Airport Drive, Charlevoix, MI 49720, or wherever he may be found.

## III.
## Jurisdiction and Venue

10. This action is brought on behalf of the United States under the qui tam provisions of the federal False Claims Act ("FCA").

11. This Court has subject-matter jurisdiction under 28 U.S.C. § 1345 and 31 U.S.C. §§ 3730(b) and 3732(a).

12. This Court has general personal jurisdiction over Island because it is a Michigan corporation with its principal place of business in Michigan. This Court has personal jurisdiction over Paul Welke because he is a Michigan resident.

13. This Court also has specific personal jurisdiction over Defendants because they purposefully availed themselves of the privileges of doing business in Michigan and their violations of federal law arise from their business activities in this State.

14. Venue is proper in this district and division under 28 U.S.C. § 1391 and under 31 U.S.C. § 3732(a) because all Defendants are Michigan residents and one or more of the Defendants resides Charlevoix County, which lies within this judicial district and division. 28 U.S.C. § 102(b)(1). Moreover, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district because that is where Defendants made the false representations that allowed them to obtain the EIDL loan in question, and where they improperly obtained and used the EIDL loan.

## IV.
## EIDL Loan Program Background

15. The purpose of the federal EIDL loan program is to help businesses that have been financially impacted by uncontrollable disasters, such as the COVID-19 pandemic. This program provided federal dollars administered in part by the SBA and the Department of Treasury to businesses who submitted applications.

16. On June 27, 2023, the SBA's Office of Inspector General issued a report estimating that, of the $1.2 trillion disbursed through COVID-19 EIDL loans and the Paycheck Protection Program, $200 billion may have been fraudulently obtained. COVID-19 Pandemic EIDL and PPP Loan Fraud Landscape, June 27, 2023. https://www.sba.gov/document/report-23-09-covid-19-pandemic-eidl-ppp-loan-fraud-landscape. According to the SBA OIG, approximately $30 billion of that has been

seized or returned to date, and the watchdog's report makes clear that the government's efforts to recover fraudulently obtained funds is far from over. As stated in the report, "investigations will ensue for years to come" in light of Congress's decision to extend the statute of limitations to 10 years for COVID-19 EIDL and PPP fraud.

17. Amid the challenging circumstances of the pandemic's early days, the SBA moved quickly to help small businesses stay afloat by developing pandemic relief programs such as COVID-19 EIDL and the PPP. According to the SBA OIG report, the government's decision to expedite the granting of relief loans created a pay-and-chase environment, in which the government prioritized getting funds to applicants even if this resulted in loans being made to ineligible entities and individuals, like Defendants, that the government would need to chase after the fact.

## V.
## Relevant Facts

### How Does Relator Know about Defendants' Fraud?

18. Relator's beloved brother, Adam Kendall, was a passenger on an Island flight that crashed in Beaver Island, Michigan on November 13, 2021. Adam, along with his beloved wife, Kate; the couple's two dogs; the pilot; and one other passenger, were all killed in the crash. The crash also severely injured a young girl who survived only because her father (one of the decedents) shielded her with his body during the crash.

19. Relator sued Defendants for wrongful death.[1] Defendants intentionally slow-played the wrongful-death litigation, delaying and obfuscating Relator's discovery efforts at every turn. After more than two years of litigation—when it finally came time for Defendants and their employees to be deposed—Defendants threatened to take the coward's way out and preemptively file for corporate bankruptcy to avoid their depositions and other pending discovery. When Island threatened bankruptcy, it admittedly was not insolvent and, but for the anticipated wrongful-death judgment, did not need bankruptcy protection.

20. But before Island threatened bankruptcy, Relator—with help from the state court—managed to secure information concerning Defendants' EIDL loan and finances. Relator's retained forensic-accounting expert, Sheila Enriquez, J.D., CPA, CFF, CVA,[2] carefully scoured the records, which revealed three forms of EIDL loan fraud by Defendants. Each form of fraud is discussed in turn below.

**Fraud No. 1: Defendants Misrepresented Island's EIDL Loan Eligibility.**

21. To be eligible for an EIDL loan as a result of the COVID-19 pandemic, a small business, like Island, needed to show the following:

---

[1] Case No. 22-0772-CZ; *Robert T. Kendall III, and Robert T. Kendall IV, Individually and as Co-Personal Representatives of the Estate of Adam Wolford Kendall, Deceased v. McPhillips Flying Service, Inc. d/b/a Island, a Michigan Corporation, Paul Welke, and Angela LeFevre-Welke*; in the 33rd Circuit Court for the County of Charlevoix, Michigan.

[2] A copy of Ms. Enriquez's expert report and CV will be provided with Relator's qui tam disclosure statement.

## Eligibility

- Substantial economic injury means the business is unable to meet its financial obligations and pay its regular and necessary operating expenses
- Loss of expected profits or a decline in sales is not considered substantial economic injury
- EIDL provides the necessary working capital to help small businesses impacted by a disaster survive until normal operations resume
- **EIDL assistance is available only to small businesses when SBA determines they are unable to obtain credit elsewhere**
- Businesses must meet the following criteria to qualify for economic injury:
  - The business was directly impacted by the disaster
  - The business cannot cover expenses due to the disaster and/or debt payments
  - The business was physically located in the declared disaster area

SBA can provide loans to help cover the costs and expenses that your business would have been able to handle if the disaster did not happen. The EIDL amount will depend on how much financial impact you have experienced and your company's financial needs, even if you didn't suffer any property damage.

Economic Injury Disaster Loans, https://www.sba.gov/funding-programs/disaster-assistance/economic-injury-disaster-loans#id-use-of-proceeds (last accessed September 30, 2024).

22. When Island originally applied for an EIDL loan in 2020, and on the three occasions when it applied for a loan increase (twice in 2021 and again in 2022), Welke filled out and signed a loan application and loan agreement on Island's behalf, representing that Island met all of the eligibility criteria. All four times Defendants filled out the EIDL loan paperwork, they specifically agreed that "[e]ligibility for this disaster Loan is limited to disaster losses that are not compensated by other sources," such as "loans" from "private organizations." Defendants also specifically agreed on every loan note and modification of note that they would be in default on a loan or loan modification if they failed to comply with "any provision of the Note, the Loan Authorization and Agreement, or other Loan Documents."

23. Defendants were also required to agree to the following warning:

> WARNING: Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines and imprisonment, or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

24. But Island did *not* meet the eligibility criteria, despite what Defendants falsely represented to the SBA. According to Ms. Enriquez's review of Island's finances, each time Island applied for an EIDL loan or loan increase, it had sufficient free cash flow to be able to meet its financial obligations and pay its regular and necessary operating expenses without EIDL-loan assistance.

25. Island also had an available line of credit at Charlevoix State Bank, a PPP loan (which was later forgiven), *and* an air carrier grant from the federal government, and thus was able to obtain credit elsewhere. Island could have used these other funding sources, instead of an EIDL loan, to meet its working-capital needs. Indeed, just 21 days after its final EIDL loan increase, Island managed to obtain a new loan from Charlevoix State Bank for $361,000.

26. Another reason that Island did not meet the eligibility requirements for an EIDL loan or loan increase is that its revenue *grew* from 2020 to 2021 to 2022, despite the COVID-19 pandemic. And Island's net income *peaked* in 2021—the same

year that it increased the amount of its EIDL loan from $150,000 to $500,000 and from $500,000 to $830,000.

27. On June 28, 2021, Island posted a Summer 2021 update on its Facebook page stating that it was hauling an "unprecedented amount of freight." And on July 8 and 13, 2021; August 2, 2021; and October 11, 2021, Island posted announcements to its Facebook page stating that it was hiring for certain positions. In other words, business was good and Island was in growth mode.

28. Defendants thus falsely claimed on their loan and loan-increase applications that Island's business suffered substantial economic injury because of the pandemic or that the airline was unable to cover its usual operating expenses due to the pandemic. As the SBA's loan-eligibility criteria make clear: "Loss of expected profits or a decline in sales is not considered substantial economic injury," and EIDL funds were intended only to "provide[ ] the necessary working capital to help small businesses impacted by a disaster survive *until normal operations resume*."

**Fraud No. 2: Island Used EIDL Loan Proceeds to Buy a Plane (a Fixed Asset).**

29. Defendants also committed EIDL loan fraud by using their loan to buy a new plane, new landing gear, and a new fork truck—i.e., fixed assets—for Island's business. According to the SBA's website, EIDL loans can be used for "[w]orking capital and normal expenses such as the continuation of health care benefits, rent, utilities, and fixed debt payments." EIDL funds *cannot* be used for "expanding facilities, ***buying fixed assets***, repairing physical damages, refinancing debt, paying out

dividends or bonuses, or paying back loans to stockholders or principals." *Id.* (emphasis added).

30. Likewise, in each of their four loan agreements with the SBA, Defendants specifically agreed that they would use all loan proceeds solely as working capital:

> USE OF LOAN PROCEEDS
>
> - Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter . . . .

31. Defendants also agreed each time they signed a loan agreement to keep itemized receipts for all loan funds spent, and to keep these receipts for three years from the date of the final disbursement on April 6, 2022.

32. Relator's expert's review of Island's finances shows that, without the EIDL-loan funds received from the SBA, Island would not have had sufficient capital to buy the plane and other fixed assets; thus, Island must have used the loan proceeds for those purchases. The timing of Island's fixed-asset purchases compared with its EIDL loan draws is telling:

- **June 16, 2021**: Island made a $120,352.26 down payment on its new plane (tail number N979PW), all of which can be traced back to its original $150,000 EIDL loan.

- **June 24, 2021**: Plane manufacturer, Britten-Norman, announced on its website that Island had purchased its fifth Britten-Norman airplane; Island posted the announcement to its Facebook page.

- **July 29, 2021**: One month after announcing its new plane purchase, Island increased the amount of its EIDL loan from $350,000 to $500,000. In connection with the loan increase, Island represented to the SBA that it could not meet its financial obligations and pay its regular and necessary

operating expenses without EIDL-loan assistance. This representation was directly at odds with buying a new plane to expand Island's fleet.

- **August 4, 2021**: Island increased the amount of its EIDL loan from $150,000 to $500,000.

- **October 14, 2021**: Island bought new landing gear for its fleet for $29,633.08, all of which came from Island's August 4, 2021 EIDL loan draw.

- **October 28, 2021**: Island posted on its Facebook page pictures of its new, freshly painted Britten-Norman aircraft.

- **October 29, 2021**: One day after posting photos of its new plane on Facebook, Island increased the amount of its EIDL loan from $500,000 to $830,000. Again, in connection with the loan increase, Island represented to the SBA that it could not meet its financial obligations and pay its regular and necessary operating expenses without EIDL-loan assistance. And, again, Island's representation was at odds with buying a new plane. That same day, Island and Britten-Norman both announced on Facebook that they were "one step closer" to delivering the newly purchased plane.

- **November 22, 2021**: Island made a $71,076.77 partial payment on its new plane. The funds can be traced to Island's August 4, 2021 EIDL-loan draw.

- **November 24, 2021**: Island paid $21,750 in connection with the delivery of its new airplane. Again, the funds can be traced to Island's August 4, 2021 EIDL-loan draw.

- **December 9, 2021**: Island paid $10,000 for an unidentified aircraft part. Once again, the funds used came from Island's August 4, 2021 EIDL-loan draw.

- **February 1, 2022**: Island made a $25,000 payment towards airplane tail number N406CW using funds that can be traced to its December 3, 2021 EIDL-loan draw when it increased the amount of its EIDL loan from $500,000 to $830,000.

- **August 4, 2022**: Island paid $30,000 for new Britten-Norman-manufactured landing gear for one of its planes. The funds used for this purchase can be traced to Island's December 3, 2021 EIDL-loan draw.

- **December 8, 2022**: Island paid $15,000 for a new fork truck, again using funds from its December 3, 2021 EIDL-loan draw.

33. Defendants violated the SBA's rules and their express representations to the SBA when they used their EIDL loan proceeds to buy a new plane to expand Island's fleet and other fixed assets rather than use it for working capital.

**Fraud No. 3: Island Used EIDL Loan Proceeds to Buy Non-American-Made Products.**

34. Each time Defendants applied for and received an EIDL loan or loan increase, they also represented in the loan paperwork that they would use the loan proceeds to buy only American-made equipment and products:

> REQUIREMENTS FOR USE OF LOAN PROCEEDS AND RECEIPTS
>
> - Borrower will, to the extent feasible, purchase only American-made equipment and products with the proceeds of this Loan.

35. Defendants ignored their own representations and used the EIDL loan proceeds to buy a British-manufactured plane and new landing gear from Britten-Norman. Before deciding to buy from Britten-Norman, Defendants did not even consider buying from any of the many American plane manufacturers, such as Cessna, Cirrus, Gulfstream, or Piper. There are many American-made planes and landing gear that would have met Island's needs.

36. On information and belief, Defendants used the EIDL loan proceeds to buy other non-American equipment or products, too, such as aircraft parts and other items.

37. This is yet another example of Defendants' making false representations to the SBA to secure EIDL loan proceeds to which they otherwise would not have been entitled.

**Paul Welke Is Individually Liable for Fraud.**

38. Island's 100% owner, Paul Welke, signed every loan application, loan agreement, and loan increase agreement on behalf of Island. He also personally guaranteed Island's loan obligations. Thus, he is individually liable for fraud to the same extent as Island.

## VI.
## Causes of Action

**Count 1: Violations of 31 U.S.C. § 3729(a)(1)(A)**

39. Liability arises under the FCA when a person does any of the following:

- knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
- knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or
- knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1)(A), (B), (G).

40. A person who violates the FCA is liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted for inflation,[3] plus 3 times the amount of damages which the United States sustains because of the act of that person. 31 U.S.C. § 3729(a)(1).

41. "Knowingly" means that "a person, with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of

[3] The latest inflation-adjusted penalty amounts are $13,946 to $27,894 per claim.

the information." *Id.* § 3729(b)(1)(A)(i)-(iii). No proof of specific intent to defraud is required. *Id.* § 3729(b)(1)(B).

42. As described above, Defendants violated the FCA by: (1) knowingly misrepresenting Island's EIDL loan eligibility on repeated occasions, (2) knowingly misusing the loan proceeds to buy fixed assets for their business after specifically representing that they would use the proceeds only for working capital, and (3) knowingly misusing the loan proceeds to buy non-American-made products after specifically representing that they would use the proceeds only for American-made equipment and products. Such fraudulent acts and false statements caused the federal government, specifically the SBA and Treasury, to loan Defendants money that they never should have received.

43. As a result of Defendants' acts or omissions, the United States is entitled to significant damages under the FCA. In addition, a fine up to $10,000 (as adjusted for inflation) may be assessed for <u>each</u> false representation made by Defendants.

44. Defendants' misconduct also violates several other federal statutes, both civil and criminal. For example, the Small Business Act provides that: "Whoever wrongfully misapplies the proceeds of [an EIDL loan] shall be civilly liable to the Administrator [of the SBA] in an amount equal to one-and-one half times the original principal amount of the loan." 15 U.S.C. § 636(b). Likewise, 15 U.S.C. § 645 makes it a crime to knowingly make a false statement to obtain a loan from the SBA; 18 U.S.C. § 1001 makes it a crime to knowingly and willfully make any false statement in any matter within the jurisdiction of the executive, legislative, or judicial branch of the

federal government; 18 U.S.C. § 1014 makes it a crime to knowingly make any false statement or report to influence the action of the SBA; and 18 U.S.C. § 1040 makes it a crime to commit fraud in connection with major disaster or emergency benefits.

## VII.
## Attorneys' Fees

45. Relator is entitled to an award of his reasonable and necessary attorneys' fees under the FCA.

## VIII.
## Conditions Precedent

46. All conditions precedent have been performed, have occurred, or have been rendered futile.

## IX.
## Prayer

Relator prays for judgment for the United States against Defendants for:

- Actual damages;
- Treble damages of three times the actual damages;
- Civil penalties on a per-misrepresentation basis under the FCA;
- A civil penalty of one-and-one half times the original principal amount of Defendants' EIDL loan under 15 U.S.C. § 636(b); and
- Costs, pre- and post-judgment interest, and all other appropriate relief.

Relator also prays for judgment in his favor against Defendants for a percentage of all damages and penalties awarded to the United States, reasonable and necessary attorneys' fees, costs, and interest.

Dated: October 16, 2024.

Respectfully submitted,

**NICHOLS BRAR WEITZNER & THOMAS LLP**

*/s/ Zachary W. Thomas*
Zachary W. Thomas
Admitted, W.D. Michigan
(713) 405-7096
zthomas@nicholsbrar.com
2402 Dunlavy Street
Houston, Texas 77006

e
Court for the Western
Southern Division

NW
503




District Clerk's Offi
United States Distric
District of Michigan
399 Federal Building
110 Michigan Street
Grand Rapids, MI 49